**PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**David J. JUAREZ, Defendant–Appellee,**

and

**Mary Ferencz, Maxine Juarez, David Rodriquez, and Ronald Anselmo Molina a/k/a Ronald Edmundson, Defendants.**

No. 88SA281.

Supreme Court of Colorado, En Banc.

April 17, 1989.

Barney Iuppa, Dist. Atty., Robert M. Brown, Chief Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Jeralyn E. Merritt, Denver, for defendant-appellee.

VOLLACK, Justice.

In this interlocutory proceeding, the prosecution appeals the El Paso County District Court order suppressing evidence seized by law enforcement officers during a search of a vehicle owned by one of the defendants in this narcotics case, David Juarez. We reverse the suppression order and remand the case for further proceedings.

## I.

In February 1988, the Colorado Springs Police Department began surveillance of a single family residence located at 943 Shrider Road. One of the defendants, Mary Ferencz, had leased this residence for three months under the name Mary Jordan, at the direction of Ronald Edmundson. Ferencz lived at a different address in Colorado Springs. The utilities at the residence were listed under the name of Dean Lopez, although no individual with this name was ever located during the investigation. Another defendant, David Rodriquez, was staying at the Shrider Road residence, allegedly for the purpose of guarding the contraband stored there.

Federal criminal complaints were filed and federal warrants issued against Ronald Edmundson and Maxine Juarez for obstruction of justice charges arising from unrelated criminal activities in Pennsylvania. When the Colorado Springs FBI office learned of the FBI complaints and warrants on March 14, 1988, the FBI agents and local police department began a "joint operation." Two days later, surveillance officers observed a white Ford Bronco being driven from the Shrider Road address. The Bronco was being driven by an adult male and was known to be registered to Edmundson. Because Colorado Springs Police Officer Alvis knew that an FBI fugitive warrant had been issued for the registered owner of the Bronco he stopped the vehicle. The driver identified himself as David Rodriquez but could not produce identification. Rodriquez explained to the officer that he had borrowed the Bronco from Edmundson, who was in Arizona at the time. Officer Alvis followed Rodriquez to the Shrider Road residence in order for Rodriquez to produce his driver's license. Upon discovering that Rodriquez' Arizona driver's license was suspended, Officer Alvis issued a traffic ticket to Rodriquez and left.

Later that afternoon, officers saw Edmundson and Rodriquez leave the Schrider Road address in a gold Mercedes. The Mercedes was stopped and Edmundson and Rodriquez were arrested. Having located Edmundson, the FBI agents and police officers returned to the Shrider Road address to look for Maxine Juarez, the other individual named in the FBI warrant. At approximately 2:00 p.m., they entered the residence with a key obtained from Rodriquez.

Upon entering the house, Colorado Springs Police Officer Berggren observed a bag of marijuana lying on the kitchen counter. The officer found bales of marijuana inside two closets in the garage and inside a Chevrolet Suburban (Suburban) parked in the two-car attached garage. Mary Ferencz was the registered owner of the Suburban. The agents and officers did not find Maxine Juarez in the Shrider Road residence.

The officers left the residence and obtained a search warrant using the information they had obtained by entering the Shrider Road residence to establish probable cause for issuance of the warrant. The officers returned to the Shrider Road residence with the search warrant and conducted a more thorough search of the house and the Suburban, pursuant to the warrant. At this point, there was a blue van parked in the circular driveway outside the house. The officers searched the van, which was registered to Maxine Juarez' husband, David Juarez, and had been purchased by him two days earlier. The van contained almost 1,000 pounds of marijuana.[1]

Later the same day, Maxine Juarez was located and arrested at a local motel. Her motel room was registered in her husband's name for a six-day period beginning March 12, 1988. Mary Ferencz, who had rented the adjoining hotel room, was present in Maxine Juarez' room and was also arrested. A bag of marijuana seen on an item of luggage was seized from the hotel room.

The five defendants[2] were each charged by information with three counts: possession of marijuana with intent to distribute,[3] conspiracy to commit distribution of marijuana,[4] and special offender status for purposes of sentence enhancement.[5]

The narrow subject of this appeal is the suppression motion filed by David Juarez. Juarez asked the trial court to suppress the evidence seized from his Chevrolet van, the Suburban, the house, and the garage. The trial court applied the rule "that in order to have standing, a person claiming the standing would have to be able to show some legal or physical relationship to the house

or the vehicles in order to gain standing." The trial court found "no evidence showing any connection between the residence and the vehicle other than its presence in the circular driveway." Based on this, the court initially ruled that with regard to both the residence and the vehicles, David Juarez had no standing to challenge the search and seizure. Later in the hearing, however, the court reversed itself in part, holding that because Juarez was the owner of the van, he was entitled to challenge the search and seizure of the evidence seized from his van.

The trial court ruled and the prosecution has conceded that there were no exigent circumstances to justify the warrantless entry into the Shrider Road residence.

The prosecution has asked this court to address three issues arising from the suppression order as it pertains to David Juarez. First, we must decide whether David Juarez had standing to contest the warrantless search of the Shrider Road residence. Second, we decide whether the language in the search warrant directing the officers to search "all vehicles" on the property included the van parked in the driveway. Third, we must determine whether the search warrant affidavit contained probable cause to support a search of the van parked in the driveway.

## II.

### *Standing*

 The fourth amendment right against unreasonable searches and seizures is personal and cannot be vicariously asserted. *People v. Whisler*, 724 P.2d 648, 649 (Colo.1986); *People v. Cobb*, 690 P.2d 848, 851 (Colo.1984). Before a defendant

---

1. According to the affidavit, the Chevrolet van contained 996 pounds of marijuana, and the house and Suburban yielded a total of 2,318 pounds of marijuana.

2. The five defendants were David Juarez, his wife Maxine Juarez, Mary Ferencz, David Rodriquez, and Ronaldo Molina a/k/a Ronnie "Edmonson."

 The spelling of "Edmonson" found in the complaint and the spelling of "Edmondson" found in the arrest warrant and other doc-

uments are inconsistent with the spelling of Edmundson in the remainder of the record. For purposes of consistency, the spelling "Edmundson" will be used throughout this opinion.

3. § 18–18–106(8), 8B C.R.S. (1986 & 1988 Supp.) (class 4 felony).

4. § 18–18–106(8), 8B C.R.S. (1986 & 1988 Supp.) (class 4 felony).

5. § 18–18–107(1)(e), 8B C.R.S. (1986).

can challenge the constitutionality of a governmental search, he must establish that he has standing; to have standing, he must have "a legitimate expectation of privacy in the areas searched or the items seized." *People v. Naranjo*, 686 P.2d 1343, 1345 (Colo.1984); *People v. Tufts*, 717 P.2d 485, 489 (Colo.1986). The concept of standing "focuses on whether the person seeking to challenge the legality of a search as a basis for suppressing evidence was himself the 'victim' of the search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 132, 99 S.Ct. 421, 424, 58 L.Ed.2d 387 (1978). In ruling on standing, "a court will consider, among other factors, whether an individual has a possessory or proprietary interest in the areas or items which are the subject of the search." *Naranjo*, 686 P.2d at 1345. The defendant bears the burden of establishing standing to challenge the legality of a search, and the issue "must be resolved in view of the totality of circumstances in a particular case." *Tufts*, 717 P.2d at 490. Whether an asserted expectation of privacy is "legitimate" depends on objective factors, not on the individual's subjective expectations. *Id.*

■ The standing question at issue here is whether David Juarez had standing to challenge the officers' illegal entry into the Shrider Road residence and the observations made by them as a result of the illegal entry. When a suppression motion is filed in a criminal case "on the ground that the evidence was obtained in violation of the Fourth Amendment, there may be put in issue the question of whether the movant is a proper party to assert the claim of illegality and to seek the remedy of exclusion." 4 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.3, at 279 (1987) (hereinafter LaFave). The trial court held that the warrantless search of the Shrider Road residence was not constitutionally protected "and the motion with regard to suppression of evidence within that house should be granted *with regard to the persons having standing for that suppression or-*

*der.*" (Emphasis added). If we conclude that David Juarez has standing to challenge the illegal house entry, then those parts of the affidavit that are based on the officers' observations in the house and garage must be excised from the affidavit before the affidavit is evaluated for probable cause.

The trial court here found, however, that there was "no evidence showing any connection between the residence and the [outside] vehicle other than its presence in the circular driveway." Because Juarez had no expectation of privacy in the Shrider Road residence, he did not have standing to challenge the search warrant.

"A person who is aggrieved by an illegal search and seizure *only* through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (emphasis added).

The defendant asks us to conclude that he has standing to challenge the search warrant authorizing a search of the Shrider Road residence. If we decide that he does have standing to challenge the search warrant, then the evidence seized from the residence cannot be used to establish probable cause for search of the van belonging to him.

The fundamental inquiry is "whether the conduct which the defendant wants to put in issue involved an intrusion into *his* reasonable expectation of privacy." LaFave § 11.3, at 281 (emphasis in original). The house was leased to Mary Ferencz. Apparently, the only individual who actually lived in the house was David Rodriquez. Mary Ferencz resided at a different Colorado Springs address. A defendant who does not reside on the premises, had no right to be on the premises, and does not have a possessory interest in the premises is not an aggrieved person and cannot complain of the unlawfulness of a search. *Thomas v. United States*, 394 F.2d 247, 249 (10th Cir.1968), *cert. denied*, 394 U.S. 931, 89 S.Ct. 1199, 22 L.Ed.2d 460 (1969).

There was no evidence that the defendant shared payment of the rent. *People v. Savage*, 630 P.2d 1070, 1073 (Colo.1981) (defendant who was one of four people living in the trailer, paid an equal share of the rent, and used the living area along with the others had a reasonable expectation of privacy). David Juarez was not present in the house when the evidence was seized. *Cf. People v. Godinas*, 176 Colo. 391, 394, 490 P.2d 945, 947 (1971) (defendant was legitimately in the house and therefore had standing to challenge the search of the house); *Adargo v. People*, 173 Colo. 323, 325, 478 P.2d 308, 308 (1970) (defendant had standing because he was in his sister's home with her permission when the search of her house was conducted). Juarez did not sign the lease on the property. Juarez therefore has no standing to challenge the search warrant issued for a search of the Shrider Road residence.

"[N]either the evidentiary significance of the objects seized nor the nature of the pending charges automatically confers on him the standing necessary to the successful assertion of a Fourth Amendment claim." *People v. Henry*, 631 P.2d 1122, 1129 (Colo.1981). Based on the foregoing, we conclude that David Juarez, who had no discernible connection to or interest in the Shrider Road residence, did not have an expectation of privacy in the house. He therefore does not have standing to challenge the search warrant. For this reason, Juarez is not entitled to challenge the search of the house on the basis that the search warrant violated his Fourth Amendment rights.

### III.

#### *Language of the Search Warrant*

 Having concluded that David Juarez did not have standing to challenge the search warrant with respect to the search of the house, the second issue for our resolution is whether the language in the search warrant directing the officers to search "all vehicles" on the property was impermissibly broad.

The search warrant in this case authorized a search of "943 Shrider Road, El Paso County, State of Colorado which is a single family dwelling with an attached garage which is white in color, *to include all vehicles* and sheds on the property." (Emphasis added). David Juarez' contention is that the language emphasized above in the warrant is "impermissibly overbroad and insufficiently particular." Answer Brief, at 17.

The parties correctly note that there are no Colorado cases addressing interpretation of the words "all vehicles" in a search warrant that authorizes the search of a designated premises or building. Other courts, however, have often upheld the scope of such language.

The point now under consideration has been directly passed upon in other jurisdictions, and it has been uniformly held that where a search warrant authorizes officers to search a described building, together with the yard or curtilage on which the building is located, *parked automobiles* or other vehicles found in the yard or within the curtilage are proper subjects of search under the warrant.

*Alexander v. Florida*, 108 So.2d 308, 309 (Fla.1959) (emphasis added). In *Florida v. Haugee*, 402 So.2d 1216 (Fla.App.1981), the warrant authorized search of a private dwelling "together with the yard and curtilage thereof, any and all outbuildings and vehicles thereon." *Id.* The Florida court held:

In this case a probable cause for the warrant was the reasonable belief that contraband drugs were going to be somewhere in or around this single family dwelling after midnight. As there were no details as to how the contraband drugs were going to arrive there or where the drugs [were] going to be located after they arrived, the search warrant was not overbroad in permitting a search of all places where the contraband could be hidden in the dwelling and its curtilage, including all buildings and vehicles thereon.

*Id.* at 1217; *see also Florida v. Musselwhite,* 402 So.2d 1235, 1237 (Fla.App.1981) ("[A] driveway to one's residence is within the curtilage of that property.... [V]ehicles within the curtilage are proper subjects of search, especially where, ... the warrant charged the police with the search of vehicles within the curtilage.").

In *Albert v. Georgia,* 155 Ga.App. 99, 270 S.E.2d 220, *cert. denied,* (Ga.1980), the warrant authorized a search of "[a]ll vehicles, storage houses, and any other appurtenances located within the curtilage of said premises." *Id.* at 100, 270 S.E.2d at 221. The court held: "Although the vehicle had moved onto the curtilage shortly before the police officers arrived and it was not specifically described in the warrant, '[c]ommon prudence dictates that the vehicle has so identified itself within the premises and its curtilage as to make it subject to search as a part of the curtilage and premises.'" *Id.* (quoting *Bellamy v. State,* 134 Ga.App. 340, 341, 214 S.E.2d 383, 384 (1975)). In *Bellamy,* the defendant challenged the search of a U–Haul truck parked in the driveway of the premises described in the warrant. The court held that because "[t]he word 'curtilage' includes the yards and grounds of a particular address, and the cases cited show 'curtilage' also includes the garden, barns, buildings, etc.," vehicles standing on the grounds "may be searched though not specifically described." 134 Ga.App. at 341, 214 S.E.2d at 383–84.

In *North Carolina v. Reid,* 23 N.C.App. 194, 208 S.E.2d 699 (1974), the court upheld the search of a vehicle that was on the premises at the time and within the area encompassed by the search warrant, even though the search warrant did "not specifically refer to all outbuildings, appurtenances, etc." *Id.* at 196, 208 S.E.2d at 701.

In *Leslie v. Oklahoma,* 294 P.2d 854 (Okla.Crim.App.1956), the warrant authorized a search of a particular address "together with the curtilage thereof and the appurtenances thereunto belonging." *Id.* at 855. The defendant sought to suppress

whiskey found in his automobile, but the Oklahoma court held that *"the automobile sitting on the driveway came within the purview of the description* herein involved as an object of search," even though the vehicle was not described in the warrant. *Id.* at 856 (emphasis added); *see also Beeler v. Oklahoma,* 677 P.2d 653 (Okla.Crim. App.1984) ("The pickup truck [that was searched] was parked in the yard of the residence, clearly within the 'curtilage.' ... The fact that the vehicle did not belong to the owner of the premises cannot be regarded as significant, since it was not revealed to the officers until after the search." *Id.* at 657.)

The Tennessee Supreme Court upheld a warrant that only authorized a search of the described premises and did not include any reference to any vehicles. *Lawson v. Tennessee,* 176 Tenn. 457, 143 S.W.2d 716 (1940). Alcohol was seized from the defendant's car, which was parked nearby, and the court held:

> While the warrant in this case specifically designated the building on the premises to be searched, we are of [the] opinion that the search of the automobile parked near the building, but on the same premises, cannot be said to be an unreasonable search.

*Id.* at 460, 143 S.W.2d at 717.

In *Washington v. Frye,* 26 Wash.App. 276, 613 P.2d 152 (1980), the warrant authorized a search of the defendant's address and all persons or vehicles found at that address, and he argued that this language in the warrant was improperly broad in scope. *Id.* at 277–278, 613 P.2d at 154. The Washington court rejected this argument, holding that the warrant language "authorizing a search of the 'residence/vehicles/persons' of defendant's address" was valid. *Id.* at 281, 613 P.2d at 156. "The test for sufficiency of the description of the place to be searched is whether the executing officer can, with reasonable effort, locate the item to be searched. Because the warrant specifically referred to persons and vehicles found at defendant's

residence, we hold it accords with the above standard." *Id.* at 281–282, 613 P.2d at 156 (citations omitted).

In *Washington v. Huff*, 33 Wash.App. 304, 654 P.2d 1211 (1982), the warrant authorized search of "the premises ... and all the buildings and outbuildings thereon, and all property real or personal situated on said described property." *Id.* at 309, 654 P.2d at 1214. The Washington court upheld the search because "[a]n automobile is usually considered personal property." *Id.; see also Washington v. Claflin*, 38 Wash.App. 847, 851–852, 690 P.2d 1186, 1190 (1984) (where warrant authorized search of the defendant's "house, premises and curtilage," the court held that evidence seized from a car parked on the premises was admissible).

The Alabama court has held that when a truck that was searched "was parked in appellant's backyard, directly behind his back door [it] was clearly within the curtilage of the dwelling and, therefore, on the 'premises' described by the search warrant." *Korreckt v. Alabama*, 507 So.2d 558 (Ala.Crim.App.1986); *cf. New Jersey v. Parsons*, 83 N.J.Super. 430, 200 A.2d 340, 349 (1964) (held that warrant did not authorize search of the car because (1) the warrant described only the building and did not include "curtilage" or "appurtenances," and (2) the car was parked on the street, not on the described premises).

The defendant's van, at the time of the search, was located on a private unpaved driveway which provided ingress and egress to 943 Schrider Road. The house itself was on a large plot of land and was considerably distant from other houses, and the van was parked directly in front of the house. We conclude that the physical characteristics of the premises for which the search warrant issued and the location of the van on the premises were such as to render the van subject to search on the basis of the averments in the affidavit and the "all vehicles ... on the property" language of the warrant. We therefore uphold the search of the van as valid under the search warrant.

## IV.

### *Probable Cause*

██ Having concluded that David Juarez did not have standing to challenge the search warrant with respect to the search of the house, we must determine whether the affidavit underlying the search warrant contained probable cause to justify the search of the van parked in the driveway.

The three-page affidavit stated in part:

On 3–15–88, your affiant received information from ... the Federal Bureau of Investigation that they had an arrest warrant for Obstruction of Justice on ... *RONNIE EDMONDSON* and ... *MAXINE JUAREZ.*

Your affiant had previous knowledge of Ronnie Edmondson and advised Agent Sullivan that Ronnie Edmondson and another Hispanic male by the name of *DEAN RODRIQUEZ* both appeared to be living at a residence at 943 Shrider Road in Colorado Springs. Your affiant was also advised by Agent Sullivan that Edmondson and Rodriquez both appeared to spend a lot of time at 16 Leaming Drive in Colorado Springs.

. . . .

Your affiant and other members of the Narcotics Unit and Federal Bureau of Investigation maintained a surveillance of the 943 Shrider Road address and also the 16 Leaming Road address to watch for the wanted persons....

.... At approximately 2:00 p.m. [on 3/16/88], Ronnie Edmondson and Dean Rodriquez exited the residence and got into a 1976 gold Mercedes Benz with Arizona license plate ARX–116 and drove from the residence.

... [T]he Mercedes Benz was stopped by a marked patrol unit.... Ronnie Edmondson was, at this time, arrested on the federal warrant for Obstruction of Justice....

* * * * *

Members of the Federal Bureau of Investigation and Colorado Springs Police

Department Narcotics Unit at this time entered the residence at 943 Shrider Road to attempt to arrest Maxine Juarez, who was wanted on the federal warrant.

While checking the residence for the suspect, your affiant observed a small plastic baggie which contained suspected marijuana laying on a counter in the kitchen of the residence. Your affiant also observed in the northeast bedroom of the residence there were scales and several empty plastic bags, approximately two feet square and one foot thick, which contained marijuana residue and had the weight written on the side of the back along with the package number.

Upon entering the attached garage to the residence to look for suspect, Maxine Juarez, your affiant opened a door to a closet in the garage and observed two bales of suspected marijuana on the top shelf of the closet. Your affiant then went to another closet in the garage and upon opening that door, observed twenty to thirty bales of suspected marijuana. Your affiant noted there was a black and gray Chevrolet Suburban parked in the garage and upon opening the door to look inside it for the suspect, your affiant observed more bales of the suspected marijuana.

The wanted female, Maxine Juarez, was not located inside the residence and there were no other persons inside the residence.

. . . . .

Based on the aforementioned information, your affiant request [sic] that a search warrant be issued for the residence and attached garage and all vehicles and sheds on that property. Possession of Marijuana and Possession of Marijuana to Dispense are both violations of Colorado Revised Statutes 18–18–106.

"An affidavit which sets forth sufficient facts for a person of reasonable caution to believe that contraband or material evidence of criminal activity will be found in the place to be searched is sufficient to support a search warrant." *People v. Tufts*, 717 P.2d 485, 493 (Colo.1986); *People v. Hill*, 690 P.2d 856, 859 (Colo.1984).

The presence of marijuana in the kitchen of the residence, the bedroom, the garage, and in the vehicle parked in the garage would lead a person of reasonable caution to believe that contraband would be found on the premises. In *Tufts*, the trial court had suppressed the evidence seized from the defendant's vehicle, which was parked across the street from the defendants' apartment. This court reversed, holding:

> In our view, the facts establishing probable cause to believe that Tufts was involved in the cocaine transaction, which were largely included in Detective Hall's affidavit, combined with Tufts' statement that he was the owner of the Cadillac, supported a reasonable belief that contraband or narcotics-related evidence would be found in Tufts' car.

*Tufts*, 717 P.2d at 493; *see also Florida v. Haugee*, 402 So.2d 1216, 1217 (Fla.App. 1981) ("In this case a probable cause for the warrant was the reasonable belief that contraband drugs were going to be somewhere in or around this single family dwelling."). There does not have to have been a direct observation to establish probable cause. Probable cause "may arise out of the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment and normal inferences as to where a criminal might likely hide the items." *Beeler v. Oklahoma*, 677 P.2d 653, 657–58 (Okla.Crim.App.1984). Because there was probable cause to support the warrant at issue here, the warrant was valid and the evidence was lawfully seized as to David Juarez.

### V.

In summary, we conclude that David Juarez did not have standing to challenge the search warrant with respect to the search of the house. The observations in the affidavit underlying the search warrant do not need to be stricken before the as-

sessment of probable cause is made to support the search warrant. Finally, we conclude that the phrase "all vehicles" did not, under these circumstances, result in an impermissibly broad search. We reverse and remand for further proceedings consistent with this opinion.

ERICKSON, J., dissents.

KIRSHBAUM, J., joins in the dissent.

LOHR, J., dissents.

ERICKSON, J., joins in the dissent in part.

ERICKSON, Justice, dissenting:

I respectfully dissent. In my view, the search of Juarez's van and the seizure of the marijuana from the van was predicated on the search warrant for the residence on Shrider road, and accordingly, Juarez has standing to challenge the search warrant of the residence which included his van. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *People v. Tufts*, 717 P.2d 485 (Colo.1986); *People v. Naranjo*, 686 P.2d 1343 (Colo.1984).

The prosecution has conceded that because there were no exigent circumstances to justify the warrantless entry into the residence, the entry and observations supporting the application for a warrant were constitutionally invalid. It is undisputed that the affidavit supporting the search warrant was the result of illegal entry and the observations of the police in their mini-search. Although the search warrant authorized the police to search "all vehicles" on the property, the probable cause for the search warrant was based on facts obtained by the unlawful police entry into the residence. Neither the van nor David Juarez is mentioned in the affidavit filed in support of the search warrant. The affidavit does not refer to any specific vehicle on the premises that was not previously searched. In short, the police did not have probable cause to believe that the van was involved in criminal activity.

Probable cause requires that the affidavit allege sufficient facts to warrant a person of reasonable caution to believe that contraband or evidence of criminal activity is located in the area to be searched. *See People v. Hearty*, 644 P.2d 302 (Colo.1982); *People v. Ball*, 639 P.2d 1078 (Colo.1982). As stated in 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.5(d) (1987):

> Sometimes a warrant will be issued for the search of certain premises and "all automobiles thereon." Such a warrant, it would seem, is particularly vulnerable to challenge with respect to the vehicle description. As with any other description based solely upon location, there can be no assurance that the vehicle or vehicles as to which information was gathered during an earlier investigation will be the vehicles found on the premises at the time of the search. The risk of error is compounded when the plural "all automobiles" is used. Moreover, such a description suggests that there is likely to be a probable cause deficiency as to the automobiles; the "all automobiles" language might well have been added without any evidence tending to show that vehicles on the premises were likely places of concealment for the items to be seized. In short, the "all automobiles thereon" descriptions are subject to challenge for essentially the same reasons that make an "all persons thereon" description vulnerable.

When an affidavit for a search warrant alleges sufficient facts for a person of reasonable caution to believe that contraband or material evidence or criminal activity will be found in the place to be searched, probable cause has been established. *People v. Rayford*, 725 P.2d 1142 (Colo.1986); *People v. Hart*, 718 P.2d 538 (Colo.1986). The sufficiency of a search warrant is determined by examining only the four corners of the search warrant. *People v. Donahue*, 750 P.2d 921 (Colo.1988); *People v. Chase*, 675 P.2d 315 (Colo.1984).

A person of reasonable caution could not conclude that because there was marijuana

in the Shrider residence, there was marijuana in the Juarez van parked in the driveway. There was no description of the van in the affidavit or the warrant, and there was no allegation that Juarez's van was employed in criminal activity. In my view, the language "all vehicles ... on the property" in the warrant is overbroad and not sufficiently particular to include Juarez's van. Because the warrant was facially insufficient and did not identify with particularity the vehicle to be searched, it failed to provide probable cause to search the Juarez van. I would hold that Juarez had standing to challenge the validity of the search warrant and would affirm the trial court's suppression order.

I join the dissent of Justice LOHR, apart from the portion of the dissent relating to standing.

I am authorized to say that Justice KIRSHBAUM joins in this dissent.

LOHR, Justice, dissenting:

David Juarez is charged in El Paso County District Court with offenses including possession of marijuana with intent to distribute and conspiracy to distribute marijuana. *See* maj. op. at 1288. In this interlocutory appeal, the People challenge an order of the district court suppressing marijuana discovered in a search of Juarez's blue van, which was located in a circular drive on the premises at 943 Shrider Road in El Paso County. The majority holds that the search was constitutionally permissible and reverses the district court's suppression order. I respectfully dissent.

I.

The search at issue here was conducted pursuant to a search warrant. In Part II of the majority opinion, the court concludes that Juarez had no standing to challenge the warrantless search of the 943 Shrider Road house and a vehicle parked in the garage of that house. Pursuant to this warrantless search, law enforcement officers gathered information that supplied part of the factual basis for the affidavit upon which the search warrant at issue here was based. I agree with the majority's conclusion that Juarez has no standing to challenge the warrantless search. The limited issues before us are whether the warrant sufficiently described Juarez's van and whether there was probable cause to support a warrant authorizing the search of the van.

II.

The warrant described "all vehicles ... on the property" at 943 Shrider Road as among the places to be searched. The affidavit on which the search warrant was based, however, makes no mention of Juarez or of his van, although it does describe a gray Chevrolet Suburban that was parked in the 943 Shrider Road garage and was found to contain bales of suspected marijuana during the earlier, warrantless search. The affidavit also describes a 1976 gold Mercedes Benz that the officers had observed at that location. Under these circumstances, it is questionable whether the warrant can properly be construed to describe Juarez's van as among "all vehicles ... on the property" and therefore to authorize a search of that van. *See* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.5(d) (1987). ("Sometimes a warrant will be issued for the search of certain premises and 'all automobiles thereon.' Such a warrant, it would seem, is particularly vulnerable to challenge with respect to the vehicle description. As with any other description based solely upon location, there can be no assurance that the vehicle or vehicles as to which information was gathered during an earlier investigation will be the vehicles found on the premises at the time of the search.")

III.

Even if the vehicle description in the warrant were considered sufficient, however, the affidavit for search warrant set

forth no probable cause to believe that Juarez's blue van contained contraband. In order to find an affidavit adequate to support a search warrant, a magistrate must conclude that the affidavit sets forth sufficient facts to justify a belief that evidence of criminal activity will be found in the place to be searched. *People v. Rayford,* 725 P.2d 1142 (Colo.1986). In assessing the validity of a search warrant, a court is limited to the information and circumstances available to the magistrate at the time the warrant was issued and set forth within the four corners of the affidavit for search warrant. *People v. Chase,* 675 P.2d 315 (Colo.1984).

The affidavit underlying the search warrant involved in this case contained information that two persons, Ronnie Edmondson and Maxine Juarez, were named in federal arrest warrants based on charges of obstruction of justice. In addition, the affidavit revealed that Ronnie Edmondson and an individual named Dean Rodriquez "appeared to be living" at the Shrider Road residence. The affidavit also stated that the Shrider Road residence and a Chevrolet Suburban parked in its garage contained large amounts of marijuana. The affidavit made no mention of either David Juarez or a blue van, much less that there was any reason to suspect David Juarez of criminal activity or to believe contraband would be concealed in his van.

In sum, the allegations contained in the affidavit presented the issuing magistrate with no probable cause to believe that anyone present at the Shrider Road residence other than the occupants was violating the law. Therefore, the search warrant was issued on information that justified the magistrate in issuing a warrant for a search no broader in scope than the structures at the Shrider Road residence and "all vehicles" on the property under the control of persons associated in some way with the premises. No probable cause was set forth in the affidavit to support a search of a vehicle of an outsider who happened to show up just prior to the execution of the search warrant. Moreover, as to that outsider, no one other than the officers executing the warrant had yet considered whether probable cause existed to search his vehicle. To stretch the probable cause determination made by the magistrate beyond items within the control of the persons who were connected in some way with the premises on which the marijuana had been found would be to allow the officers executing the search warrant to make their own probable cause determination based solely on a person's propinquity to others independently suspected of criminal activity. *Cf. Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979) (a search or seizure of a person must be supported by probable cause particularized with respect to that person).

Under the circumstances of this case, I would conclude that a limitation of the search to a scope no broader than that described above is necessary to accommodate the privacy interests protected by the fourth amendment. *See United States v. Percival,* 756 F.2d 600 (7th Cir.1985) (search pursuant to warrant authorizing the search of house and attached garage is limited to vehicles found in the garage owned or controlled by the owner of the house); *Dunn v. State,* 292 So.2d 435 (Fla. App.1974) (vehicle on the premises may be searched only when shown to be under the control of persons named in the warrant); *Haley v. State,* 7 Md.App. 18, 253 A.2d 424 (1969) (authorization in warrant to search premises did not support search of visitor's automobile even if it were parked on the premises); *State v. Courtright,* 60 N.C. App. 247, 298 S.E.2d 740 (1983) (search pursuant to warrant of defendant's house and vehicle not described in warrant but found on premises was permissible where keys, which were essential to control of vehicle, were found in defendant's home); *see also* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.10(c) (1987) ("a warrant for a certain house does not cover the automobile of a visitor there who has parked his car in the driveway").

Accordingly, I would affirm that portion of the trial court's order suppressing the evidence seized from David Juarez's blue van on the basis that even if the description in the warrant could be construed to extend to the van, the search warrant was not supported by probable cause to search the van.

ERICKSON, J., joins this dissent in part.